IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAY E. GLENEWINKEL | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:21-cv-2524-E (BT) |
| | § | |
| M.D. CARVAJAL, ET AL. | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jay E. Glenewinkel is a federal inmate proceeding *pro se* and *in forma pauperis* (IFP) in this prisoner civil rights action. The Court has withheld service of Glenewinkel's complaint pending judicial screening pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After reviewing all of Glenewinkel's allegations, the Court should (i) dismiss with prejudice his individual-capacity claims—except for his medical indifference claim against A. Ratliff; (ii) dismiss without prejudice his official-capacity claims against all defendants; and (iii) order service of his pleadings on A. Ratliff in accordance with the IFP statute, 28 U.S.C. § 1915, and Federal Rule of Civil Procedure 4.

**Preliminary Matters**

After filing a complaint (ECF No. 3), an amended complaint (ECF No. 11), and a response to a Magistrate Judge Questionnaire (MJQ) (ECF No. 16), Glenewinkel filed a motion for leave to supplement his amended complaint (ECF No. 18). He claims that the supplement includes new information not included in

his original pleadings. However, the information provided is mostly repetitive. He also provides the Court with instructions on how to access alleged evidence supporting his claims and includes a demand that any damages awarded by the Court be paid within 30 days of judgment. ECF No. 18-1 at 2-3.

Because Glenewinkel specifically references Federal Rule of Civil Procedure Rule 15(a)(2) in the motion, and because he is attempting to include additional allegations against particular individuals related to his medical care prior to the filing of the original complaint, the Court considers the motion to supplement pursuant to Rule 15(a) as opposed to Rule 15(d), which sometimes allows for supplemental allegations concerning conduct occurring after the filing of the lawsuit. *See* FED. R. CIV. P. 15(d); *see also Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998) ("Under Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.") (citation omitted).

Rule 15(a) of the Federal Rules of Civil Procedure requires a trial court to grant a party leave to amend a complaint freely, and the language of the rule "evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). Leave to amend is not automatic, but the court must have a "substantial reason" to deny a party's request to do so. *Id.*

In line with Rule 15's preference for liberal amendment, the Court GRANTS Glenewinkel's motion to supplement (ECF No. 18) and will consider the allegations in his supplement (ECF No. 18-1) for screening purposes.

Normally, an amended complaint renders an earlier complaint of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994). Here, however, Glenewinkel clearly intends to merely supplement the amended complaint, as opposed to supersede it entirely. Given the Court's duty to provide a *pro se* inmate's pleadings a fair and liberal construction, the Court considers the amended complaint (ECF No. 11) as the operative complaint, as supplemented by the responses to the MJQ (ECF No. 16) and the supplement to the amended complaint. (ECF No. 18-1).

## Factual Background

Giving all of his pleadings the liberal construction afforded *pro se* litigants, Glenewinkel alleges as follows:

Years before the COVID-19 pandemic, Glenewinkel was diagnosed with a host of medical issues like diabetes that required medication. *See* ECF No. 3 at 5. In June 2020, FCI Seagoville was placed in lockdown because of COVID-19. ECF No. 3 at 5. On the day the lockdown started, Glenewinkel fell and broke his hand. ECF No. 3 at 5. His hand was placed in a temporary brace, but he did not receive any further treatment. He endured "extreme pain" for weeks after the fall, and the hand never healed properly. ECF No. 3 at 6.

At the start of July 2020, Glenewinkel (and more than 50 other inmates) were forced to move housing units, which was difficult for Glenewinkel because of his broken hand and the extreme Texas heat. ECF No. 3 at 6. About a week later, a "dime-sized blister" developed on Glenewinkel's right big toe. ECF No. 3 at 6. Glenewinkel did his best to keep the toe "clean and dry," but the unsanitary living conditions in his building and lack of nutritious meals made it nearly impossible to avoid an infection. ECF No. 3 at 6.

Glenewinkel alerted an unidentified staff member that the blister had "broken and started bleeding." ECF No. 3 at 6. "Staff" told Glenewinkel to keep the blister area clean and that things would be alright. ECF No. 3 at 6.

But the wound got worse, and by mid-July, it had become bluish/purplish and caused extreme pain and pressure. ECF No. 3 at 7. Glenewinkel made more complaints to unidentified staff, but no medical assistance was offered. ECF No. 3 at 7. Glenewinkel then submitted "an electronic message to medical staff, as well as a written request," complaining of the wound, but there was no response. ECF No. 3 at 7. "A blackened calouse [sic] began to cover portions of the wound, but bleeding, swelling, and pain persisted, as did pain in the right hand." ECF No. 3 at 7. Glenewinkel made more verbal complaints to no avail. ECF No. 3 at 7.

Later that month, Glenewinkel tested positive for COVID-19 and had to move to a quarantined area, which was, again, difficult, given the wounded toe, broken hand, COVID-19, and extreme Texas heat. ECF No. 3 at 7. Glenewinkel was housed with other prisoners that had COVID-19, and there was only two feet of

space between the army cots used as sleeping quarters. ECF No. 3 at 7. The next day, Glenewinkel was moved again, and once more had to make a difficult trek to another building. ECF No. 3 at 8.

Glenewinkel looked at his toe after this move and realized that it had gotten even worse. ECF No. 3 at 8. He wrote another complaint and "handed" it to "medical during pill/insulin distribution." ECF No. 3 at 8. He made another verbal complaint to unidentified staff at that time. ECF No. 3 at 8. Staff told him they would call for him, but they did not, so Glenewinkel tried to treat the wound by cleaning it and wrapping it in a bandage. ECF No. 3 at 8.

As July progressed, Glenewinkel still experienced pain in his right hand, but it had diminished; the wounded right toe was still an issue, however. ECF No. 3 at 8. Glenewinkel also began to experience more severe COVID-19 symptoms, but never developed a fever. ECF No. 3 at 8. Between late July and mid-August, Glenewinkel made "a few more" attempts to get some medical care, again to no avail. ECF No. 3 at 8.

Eventually, Nurse Practitioner K. Bandas examined Glenewinkel. ECF No. 16 at 6. Bandas determined that Glenewinkel's wound was only a callous and "not a serious medical condition." ECF No. 3 at 9; ECF No. 11 at 4. Bandas prescribed an antibiotic, but Glenewinkel suffered an allergic reaction to the medication, which was not effective anyways. ECF No. 3 at 9. And when Glenewinkel told Bandas that the antibiotic was not working and his toe was getting worse, Bandas

refused to even look at the wound and told Glenewinkel to keep taking the medication anyways. ECF No. 16 at 6.

A few days later, Glenewinkel saw A. Ratliff,[1] another nurse practitioner. ECF No. 3 at 9. Glenewinkel told Ratliff about the wound, but Ratliff refused to even look at it. ECF No. 3 at 9. Glenewinkel told Ratliff that he was diabetic and concerned about his foot wound; he informed Ratliff that his "entire right foot was swollen," but Ratliff responded, "I don't care, it's not my problem. Go back to your unit." ECF No. 3 at 9; ECF No. 16 at 5.

The swelling of the toe increased, and it started bleeding again, showing signs of discoloration with increased pain. ECF No. 3 at 9. Glenewinkel asked another nurse to look at the wound, and she "expressed extreme concern and promptly cleaned and dressed the wound," putting Glenewinkel on a medical call-out for the next day.

The next day, Glenewinkel saw Health Care Administrator Ms. Grimm. ECF No. 3 at 10. Grimm expressed grave concern but did "little" to treat the toe, aside

---

[1] Neither Grimm nor Ratliff is named in Glenewinkel's original or amended complaint. But in his responses to the MJQ, Glenewinkel says that he "would like to add K. Grimm and A. Ratliff as defendants to this lawsuit." ECF No. 16 at 8. The Court must "look beyond" a prisoner's "formal complaint and [] consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). Those materials include any responses to a court-issued questionnaire, which "is a useful means by which the court can develop the factual basis for the prisoner's complaint." *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976); *see also Eason v. Holt*, 73 F.3d 600, 602 & n.14 (5th Cir. 1996) (explaining that questionnaire responses supplement the inmate's complaint). Accordingly, the Court has considered Glenewinkel's allegations against Grimm and Ratliff.

from taking x-rays and ordering a saline rinse and bandage. ECF No. 3 at 10; ECF No. 16 at 5. Grimm also put Glenewinkel on a daily wound care routine that forced him to walk on the wounded toe for long distances (apparently to the medical area). ECF No. 16 at 5. Glenewinkel complains, however, that Grimm should have done more. Knowing that the wound was "potentially life-altering" she should have scheduled Glenewinkel to be admitted to the hospital in a timely manner. ECF No. 18-1 at 2. Further, Grimm refused or failed to provide Glenewinkel with adequate medical supplies so that he could "care for the wound himself during off hours and weekends." ECF No. 18-1 at 2.

Later that week, Bandas examined the wound again and still insisted it was "just" a callous and not a major medical concern. The x-rays showed no infection; and Bandas ordered another antibiotic, which was also completely ineffective. ECF No. 3 at 10.

For most of September, Grimm, Bandas, and other nurses not named as defendants "were well aware of the seriousness of the open wound on the toe, with infection clearly evident, knowing [Glenewinkel] should have seen a real doctor by then." ECF No. 3 at 10.

When a doctor saw Glenewinkel in late September, the doctor immediately ordered that he be taken to the hospital. ECF No. 3 at 11. Glenewinkel then elected to have part of his right big toe amputated. ECF No. 3 at 11.[2]

---

[2] The other option was 8-12 weeks of "IV anti-biotic treatment that had only a 60% to 70% chance of recovery." ECF No. 3 at 11.

Glenewinkel continues to suffer the lingering effects of the toe amputation. ECF No. 3 at 14. He seeks compensatory damages in the amount of $843,725.00 and punitive damages in the amount of $275,000.00 "for deliberate indifference to [Glenewinkel's] serious medical care needs[.]" ECF No. 11 at 4.

**Legal Standards**

Glenewinkel's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. that section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from suit.

28 U.S.C. § 1915(A)(a) and (b).

And under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And "[a]lthough pleadings filed *pro se* are generally held to less stringent standards than those drafted by lawyers, *pro se* litigants must still reasonably comply with procedural rules." *Miller v. Lowe's Home Ctrs. Inc.*, 184 F. App'x 386, 389 (5th Cir. 2006) (per curiam) (citing *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995)).

**Analysis**

A. <u>For screening purposes only, the Court assumes that Glenewinkel's medical indifference claims are cognizable under *Bivens*.</u>

Because Glenewinkel alleges constitutional violations that occurred during his incarceration as a federal prisoner, his claims for monetary damages arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court found that the Constitution itself supplied a cause of action for money damages against a federal officer for "manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citing *Bivens*, 402 U.S. at 389-90). And following *Bivens*, the Supreme Court twice more found a cause of action arising directly under the Constitution: In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court extended *Bivens* to "discrimination on the basis of sex against a staff person in violation of the Fifth

Amendment;" and in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* to the "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva*, 973 F.3d at 442. (citing *Davis*, 442 U.S. at 228; *Carlson*, 446 U.S. at 14).

But since then, the Supreme Court has retreated from the implied-cause-of-action theory underpinning *Bivens*. It has said that "*Bivens* was the product of an '*ancien regime*' that freely implied rights of action," but "[t]hat regime ended long ago." *Id.* (citing *Ziglar v. Abbasi*, ---U.S.---, 137 S. Ct. 1843, 1855-56 (2017) (quoting in turn *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (explaining that the Supreme Court is now long past "the heady days in which [it] assumed common-law powers to create causes of action") (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (J. Scalia concurring)). "At bottom, creating a cause of action is a legislative endeavor. Courts engaged in that unenviable task must evaluate a 'range of policy considerations . . . at least as broad as the range . . . a legislature would consider.'" *Egbert*, 142 S. Ct. at 1802 (quoting *Bivens*, 403 U.S. at 407) (Harlan, J. concurring in judgment) (further citation omitted). Congress is much better suited than the judiciary for weighing those considerations. *Id.* (citing *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). And for those reasons, recognizing a cause of action under *Bivens* is now "a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1856-57 (internal quotation marks omitted).

In light of all that, a two-step inquiry guides a court's analysis of a proposed *Bivens* claim. *Egbert*, 142 S. Ct. at 1803 (citing *Hernandez v. Mesa*, ---U.S.---, 140 S. Ct. 735, 742-43 (2020)). First, the court should ask whether the case presents "'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (citing *Ziglar*, 137 S. Ct. at 1859-1860). "Virtually everything else" besides the circumstances of the original *Bivens* trilogy is a new context. *See Oliva*, 973 F.3d at 442 (citing *Ziglar*, 137 S. Ct. at 1865) (explaining that "the new-context inquiry is easily satisfied"). To determine if a case is meaningfully different for *Bivens* purposes, the Supreme Court created a non-exhaustive list of examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859-60.

Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (citing *Ziglar*, 137 S. Ct. at 1858) (internal quotation marks omitted). "If there is even a single 'reason to pause

before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez*, 140 S. Ct. at 743).

Glenewinkel's medical indifference claim is most like *Carlson*. But, "[w]hether *Carlson* can be construed as extending *Bivens* to *all* claims of medical indifference is an open question. Some district courts have expressed a willingness to extend *Bivens* to other medical care claims, while others have concluded that different medical assertions present a new context from *Carlson* and have declined to extend *Bivens*." *Manzo v. Mateware*, 2021 WL 6284098, at *4 (N.D. Tex. Dec. 13, 2021), *rec. accepted* 2022 WL 48395 (N.D. Tex. Jan. 5, 2022) (finding that medical indifference claim in which defendants allegedly "denied and delayed treatment" relating to the plaintiff's eye presented a new context) (citing *Soria v. Zungia*, 2020 WL 8483841, at *4-5 (E.D. Cal. 2020) (collecting cases)).

Post *Ziglar*, the Fifth Circuit has provided limited guidance on the issue. In *Calucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018), it found that a claim alleging medical indifference stemming from dental treatment or the lack thereof was cognizable under *Bivens*, noting that "[a]lthough the factual scenarios allowing recovery should be narrowly construed, there is an implied right of action against a federal actor who shows deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment." (citing *Ziglar*, 137 S. Ct. at 1856-57).

But the next year, in *Petzold v. Rostollan*, 946 F.3d 242 (5th Cir. 2019), the Fifth Circuit, albeit in dicta, endorsed a more nuanced approach. The plaintiff injured his ankle; multiple prison officials, including a nurse and correctional

officer, noticed his obvious injury. He asked the nurse to evaluate the injury, but, without looking at it, she told him to buy some pain medicine, find some pain medicine, or put some ice on it. He showed another correctional officer his ankle and noted that he was in pain, but the officer responded, "I don't care about your ankle."

Although the *Petzold* court ultimately found it did not need to reach the *Bivens* issue, it said it likely would have found that the plaintiff's claims presented a new context if it had because "the federal officers involved were low-level, the specific actions distinct, and the alternative remedial process robust." *Id.* at 248, n. 21. The Court also said that it was "unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration." *Id.*

Given this jurisprudence, whether Glenewinkel presents a cognizable *Bivens* claim is a potentially difficult issue. And it is one that should be considered in the context of a dispositive motion with briefing, and not at the screening stage. For purposes of screening only, the Court assumes that Glenewinkel's medical indifference claim is cognizable under *Bivens*. *See*, *e.g.*, *Redmon-El v. Sullivan*, 2021 WL 477814, at *1 (N.D. Ill. Sept. 30, 2021)* (noting that the Court had assumed, "for screening purposes only" that First Amendment *Bivens* claim was cognizable before addressing the issue in a motion to dismiss); *Akande v. Philips*, 386 F. Supp.3d 281, 290 (W.D.N.Y. 2019)* (assuming existence of *Bivens* remedy at the screening stage and electing not to delve into the issue of whether "special

13

factors" counsel against the extension of *Bivens* to this context without the benefit of briefing by the parties through a dispositive motion); *Belt v. Federal Bureau of Prisons*, 336 F.Supp.3d 428, 440 (D.N. J. 2018) (same).

B. Glenewinkel's medical indifference claim against A. Ratliff only should proceed past judicial screening.

Glenewinkel's assertion that the defendants failed to provide him with constitutionally adequate medical care, is governed by the "deliberate indifference" standard of the Eighth Amendment to the United States Constitution. U.S. CONST. AMEND. VIII; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a constitutional violation, Glenewinkel must show that the defendant acted with deliberate indifference to his medical needs such as to cause the "unnecessary or wanton infliction of pain." *Estelle*, 429 U.S. at 106. This requires proof that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted). "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle*, 429 U.S. at 107). A showing of deliberate

indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Glenewinkel fails to meet the deliberate indifference standard as to most of his claims. Most of his allegations relate to his treatment or lack thereof for COVID-19 and his broken hand. *See*, *e.g*., ECF No. 3 at 16, 17 ("[Since the broken right hand never had a chance to properly heal, though still functional, the damage from an improperly healed broken hand is also permanent and has also effected [Glenewinkel's] quality of life.") ("From July 15, 2020 through at least August 1, 2020, [Glenewinkel] was infected with the corona virus, with only moderate symptoms which was also not given any medical treatment by medical."). But he never ties the named defendants to those allegations. For a federal official to be liable under *Bivens*, she must either be personally involved in the alleged deprivation or must have implemented a policy "so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Because Glenewinkel fails to allege any named defendant had anything to do with the treatment or lack thereof that he received for COVID-19 or his hand injury, he fails to state a deliberate indifference claim as to those conditions.

Relatedly, Glenewinkel named some supervisory officials as defendants but never explained how they were involved in his care. He claims that Carvajal and

Allen—the director of the BOP and medical director of the BOP respectively at the time of the events in question—are liable, in essence, because they are responsible for the actions of their staff members. *See* ECF No. 16 at 5.

This is incorrect. *Bivens* "requires a showing of personal involvement." *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004) (per curiam) (citations omitted). Put differently, vicarious liability does not apply in *Bivens* suits. *See Watkins v. Three Administrative Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 686 (5th Cir. 2021) (citing *Iqbal*, 556 U.S. at 676). Because Glenewinkel does not allege that Carvajal or Allen had anything to do with his medical care, his claims against those defendants should be dismissed with prejudice.

Glenewinkel also named Warden Zook. He claims that she "had knowledge of my wound on my toe but failed to act on my behalf." ECF No. 16 at 5. More specifically, he claims that he made at least one verbal complaint to her about the infected toe, but she took no action. ECF No. 11 at 6. These allegations fail to state a deliberate indifference claim. There is no indication that Warden Zook was aware of a serious risk of harm to Glenewinkel. That Warden Zook was aware of Glenewinkel's injury does not mean that she understood the type of medical care required. Glenewinkel makes no allegation that Warden Zook has any medical training that might make it feasible that she would know that he was not receiving treatment, or was receiving inadequate treatment, simply because of the nature of

his injury. Glenewinkel's medical indifference claim against Warden Zook should be dismissed with prejudice.

As for Grimm, the medical administrator at FCI Seagoville at the relevant time, Glenewinkel alleges that she sent him to have x-rays that showed no infection and then "did a wound care treatment of saline and gauze bandages." ECF No. 16 at 5. She put him on a daily wound care routine that forced him to walk about a mile a day on his wounded toe. ECF No. 16 at 5. She "treated [Glenewinkel's] toe several times, aware that it (the wound) was getting worse each day, but still refused to send [Glenewinkel] out for proper medical care." ECF No. 16 at 5. Indeed, Glenewinkel claims that Grimm knew that the wound was "potentially life-altering," but failed to schedule him to be admitted to a hospital in a timely matter. ECF No. 18-1 at 2. Grimm also allegedly failed to or refused to provide Glenewinkel with "adequate medical supplies" so that he could care for the wound himself during off hours and the weekend. ECF No. 18-1 at 2.

These allegations do not evince deliberate indifference. Glenewinkel does not allege that Grimm failed to treat him or intentionally treated him incorrectly. Rather, Glenewinkel disagrees with the treatment Grimm provided and believes she should have sent him to the hospital or a doctor, which is insufficient to state a deliberate indifference claim. *See*, *e.g.*, *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) (per curiam) ("Blank's desire to see Dr. Sandknop more often amounts to a disagreement over his treatment, which, as discussed *supra*, does not rise to the level of deliberate indifference."); *Kavanaugh v. Jackson*, 2022 WL 2865865,

at *14 (E.D. Tex. June 21, 2022), *rec. accepted* 2022 WL 2865842 (E.D. Tex. July 19, 2022) ("It is well-settled that mere disagreement with a course of treatment or dissatisfaction with medical treatment does not constitute deliberate indifference under the Eighth Amendment.") (citations omitted). Glenewinkel's claim against Grimm should be dismissed with prejudice.

Glenewinkel also sues D. Bibbs, who succeeded Grimm as the medical administrator after the events in question. *See*, *e.g.*, ECF No. 11 at 6. The only allegation against Bibbs is that he was aware of Glenewinkel's ailments. *See* ECF No. 16 at 4. But there are no allegations that he was involved in Glenewinkel's medical treatment or acted with deliberate indifference by refusing to treat him, ignoring his complaints, intentionally treating him incorrectly, or engaging in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs. *See*, *e.g.*, *Johnson*, 759 F.2d at 1238. Glenewinkel's claim against Bibbs should be dismissed with prejudice.

Next, Glenewinkel alleges that Bandas told him that he only had a callous on his toe, prescribed medication that did not work, and when Glenewinkel told Bandas that the medication was not working, Bandas "refused" to look at the wound and told Glenewinkel to keep taking the medication anyways. ECF No. 16 at 6.

These allegations also fail to state a deliberate indifference claim. As with Grimm, there are no allegations that Bandas failed to provide treatment or intentionally provided incorrect treatment; instead, Glenewinkel disagrees with

Bandas's diagnosis and the treatment provided. This is insufficient to state a medical indifference claim, and Glenewinkel's claim against Bandas should be dismissed with prejudice.

However, Glenewinkel's claim against "health care provider" Ratliff should proceed past judicial screening. Glenewinkel says that he went to see Ratliff about the wound on his toe. Ratliff, however, failed to provide any care. And when Glenewinkel told him that his "entire right foot was swollen," Ratliff said, "I don't care. Go back to your unit." ECF No. 16 at 5.

These allegations are sufficient to survive judicial screening because they, liberally construed, show a failure to provide any medical treatment by a medical provider with knowledge of a serious medical condition. Thus, the Court recommends that service be issued as to A. Ratliff for the medical indifference claim.

C. Sovereign immunity bars Glenewinkel's official-capacity claims.

Glenewinkel clarifies that he wants to sue all the defendants in their official capacity for monetary damages, in addition to the individual-capacity *Bivens* claims. ECF No. 16 at 7. But a plaintiff may not "bring a [*Bivens* action] against the United States, the Bureau of Prisons [BOP], or BOP officers in their official capacities as such claims are barred by sovereign immunity." *Gibson v. Federal Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (citing *Malesko*, 534 U.S. at 484-86; *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Federal Deposit Insurance Corp.*

*v. Meyer*, 510 U.S. 471, 484-86 (1994).   Glenewinkel's official-capacity claims should be dismissed without prejudice.

### Conclusion

The Court GRANTS Glenewinkel's Motion for Leave to File Supplement (ECF No. 18) and has considered the allegations in the supplement for screening purposes.

Pursuant to its screening obligations under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court should dismiss, with prejudice, all of Glenewinkel's individual-capacity claims except for his medical indifference claim against A. Ratliff. The Court should dismiss Glenewinkel's official-capacity claims without prejudice. The Court should order that Glenewinkel's original complaint (ECF No. 3), amended complaint (ECF No. 11), responses to the MJQ (ECF No. 16), and *Supplement to Original Complaint* (ECF No. 18-1) be served on A. Ratliff pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

SO RECOMMENDED

Signed October 28, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).